**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 18-205-DLB-CJS**

**JOHN ANTONY**                                                                                          **PLAINTIFF**

**v.**                                **MEMORANDUM OPINION AND ORDER**

**BUENA VISTA BOOKS, INC.**                                                               **DEFENDANT**

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is before the Court on Defendant Buena Vista Books, Inc. ("BVB")'s

Motion to Change Venue (Doc. # 39),[1] in which it moves the Court to transfer this case to

the United States District Court for the Central District of California pursuant to 28 U.S.C.

§ 1404(a).  Plaintiff John Antony filed a response in opposition (Doc. # 40), and Defendant

replied (Doc. # 41).  For the reasons expressed below, the Motion to Change Venue will

be **DENIED.**

**I.      FACTUAL AND PROCEDURAL HISTORY**

Antony contends that over a number of years, and with the support of various

individuals in the Northern Kentucky/Ohio area, he worked on and finished a screenplay

---

[1] The Motion to Change Venue was originally filed by prior Defendant Disney Book Group, LLC (DBG).  (Doc. # 39).  However, in the interim, DBG transferred the work in question to BVB, and the parties entered an Agreed Order substituting the latter as the proper defendant.  (Doc. # 46).  The Agreed Order further states that "[t]he Section 1404(a) Transfer Motion currently pending before this Court, as supplemented . . . remains ripe for decision, and no further briefing is required."  (*Id*. at Page ID 729).  The supplemental declarations inform the Court that BVB still asserts that every key witness to the development of *The Zodiac Legacy* resides in the Central District of California and that all relevant documents and employees in the control and employ of DBG are now in the control and employ of BVB.  (Docs. # 42-1 and 44-1).  Therefore, the Court reads the language in the Agreed Order and the supplemental declarations to mean that BVB adopts the arguments made by DBG in its Motion to Transfer.

titled *Zodiac Regiment Twelve* while patronizing restaurants and coffee shops in Northern Kentucky.  (Doc. # 48 at Page ID 732; Doc. # 40 at Page ID 675).  He further contends that after finishing the screenplay, he attended a "Pitchfest" called Screenwriting Expo 5, where he scheduled a one-on-one pitch meeting with a representative from Disney, "whose name he believes to have been Kathie Fong Yoneda."  (Doc. # 48 at Page ID 737).  After the meeting, Antony states he handed the representative a copy of his screenplay and never heard back.  (*Id*. at Page ID 737-38).   The complaint alleges that years later, Antony discovered that DBG published *The Zodiac Legacy*, which is a series of illustrated novels that "not only copies the exact concept of *Zodiac Kids*, but also expresses the majority of that storyline in key elements of *Zodiac Kids'* character devices, plot, and story arc." (*Id*. at Page ID 732-33).   Being a citizen of Campbell County, Kentucky, Antony filed his complaint alleging copyright infringement in the Eastern District of Kentucky.  (*Id*. at Page ID 733).

DBG acquired the rights to publish *The Zodiac Legacy* from POW! Entertainment, LLC ("POW").  (Doc. # 39-1 at Page ID 611).  During the pendency of this Motion, the parties substituted current Defendant BVB for DBG after DBG "assigned and transferred . . . all rights[,] interest in, benefits, and liabilities relating to *The Zodiac Legacy*, and any agreements, contracts, or licenses granting the right to print, publish, sell, exploit, or distribute *The Zodiac Legacy*."  (Doc. # 46 at Page ID 727-29).  POW! is incorporated in Delaware, and BVB is incorporated in California, with both having their principal place of business in the Greater Los Angeles Area, which lies within the jurisdiction of the Central District of California.  (Doc. # 39-1 at Page ID 611-612; Doc. # 42-1 at Page ID 712; Doc. # 44-1 at Page ID 719-20).

## II.    ANALYSIS

"For the convenience of parties and witnesses, in the interests of justice, a district

court may transfer any civil action to any other district or division where it might have been

brought or to any district or division to which all parties have consented."  28 U.S.C. §

1404(a).  When analyzing a motion to transfer under § 1404(a), courts in this district utilize

the following nine factors:

> (1) the convenience of witnesses; (2) the location of relevant documents
> and relative ease of access to sources of proof; (3) the convenience of the
> parties; (4) the locus of the operative facts; (5) the availability of process to
> compel the attendance of unwilling witnesses; (6) the relative means of the
> parties; (7) the forum's familiarity with the governing law; (8) the weight
> accorded the plaintiff's choice of forum; and (9) trial efficiency and the
> interests of justice, based on the totality of the circumstances.[2]

*Conrad v. Transit Auth. of N. Ky.,* No. 19-23-DLB-CJS, 2019 WL 6829952, at *2 (E.D. Ky.

Dec. 13, 2019) (citing *Cowden v. Parker Assocs., Inc.*, No. 5:09-cv-323-KKC, 2010 WL

715850, at *2 (E.D. Ky. Feb. 22, 2010)); *see also Bell v. Jefferson*, No. 5:18-CV-032-

CHB, 2019 WL 4017241, at *8 (E.D. Ky. Aug. 26, 2019).[3]   Section 1404(a) places

"discretion in the district court to adjudicate motions for transfer according to an

'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org.,*

---

[2] The initial step under § 1404(a) is to determine whether the case could have been brought in the transferee venue.  *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).  Under the general venue statute, venue is proper in a district where "any defendant resides."  28 U.S.C. § 1391(b)(1).  Similarly, the venue statute governing copyright cases provides that venue is proper where "the defendant or his agent resides or may be found."  28 U.S.C. § 1400(a).  An entity defendant such as an LLC is considered to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  *Id.* § 1391(c)(2); *see Hall v. Rag-O-Rama, LLC*, 359 F. Supp.3d 499, 513 (E.D. Ky. 2019).  Because the Defendant is a California LLC and has its principal place of business in California, it is subject to personal jurisdiction in California and the case could have been brought there.

[3] The actual factors used in this test vary from court to court.  *See Conrad*, 2019 WL 6829952, at *2 n.1.  However, all of these various factors are "substantially the same," and the nine-factor test appears favored by the Eastern District of Kentucky.  *See id.*

*Inc. v. Ricoh*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see also Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) ("As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate.").

The moving party carries the burden of showing that the nine factors strongly support transfer, *Conrad*, 2019 WL 6829952, at *3, because § 1404(a) "provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Barrack*, 376 U.S. at 645-46.   Accordingly, a motion to transfer cannot be used to transfer the inconvenience from the defendant to the plaintiff.  *Conrad*, 2019 WL 6829952, at *3; *Cowden*, 2010 WL 715850, at *2.  "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Cowden*, 2019 WL 715850, at *2 (internal bracket omitted) (quoting *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951)).

### A.     The Convenience of Witnesses

BVB contends that all material witnesses in this case will be located in California. (Doc. # 39-1 at Page ID 616).   These include BVB's employees and the employees of POW! who worked on *The Zodiac Legacy* and potential witnesses who were present or involved in organizing the 2006 "pitch fest."  (*Id*. at Page ID 616-617).  BVB asserts that Antony "made" Kathie Fong Yoneda a key witness in this case by naming her in his original complaint as the Disney representative he pitched his script to, and, even if she is not the representative, the representative will be found in California.  (*Id*. at Page ID 616).

4

Antony contends that his key witnesses all reside in or near the Eastern District of Kentucky.  (Doc. # 40 at Page ID 679-680).  He states that BVB's witnesses are mostly its employees and employees of its partners, and therefore the convenance of those witnesses should not be considered as heavily as that of Antony's non-party witnesses. (*Id*. at Page ID 680).  Antony further contends that one of his key witnesses is a Cincinnati resident by the name of Parnak Kochyan, who will testify that Antony met with a Disney representative at the "pitch fest."  (*Id*. at Page ID 676).  Antony also offers that it is too early to know where all material witnesses will reside.  (*Id*. at Page ID 679-680).

The parties disagree on the weight that should be given to the convenience of Defendant's witnesses.  Antony argues that the convenience of those witnesses should be given little weight because they are considered party witnesses.  (Doc. # 40 at Page ID 680).  BVB, for its part, argues that POW! is a third-party corporation with no ties to BVB and its employees should therefore be considered non-party witnesses.  (Doc. # 41 at Page ID 703-704).  The parties also disagree on the materiality of the testimony from Kathie Fong Yoneda.   Defendant contends that Plaintiff's allegations "turn" on the testimony of Ms. Yoneda.  (Doc. # 39-1 at Page ID 616).  Indeed, Antony names Ms. Yoneda in his Second Amended Complaint when he alleges that he met with a Disney representative who "he believes to have been Kathie Fong Yoneda."  (Doc. # 48 at Page ID 737).  However, Antony asserts in his brief that he does not know for sure the name of the Disney representative whom he met and therefore it "cannot [be] determine[d] which venue would be most convenient for that witness."  (Doc. # 40 at Page ID 679-680).

The parties further disagree on the materiality of Antony's witnesses—the ones who helped Antony with *Zodiac Kids* as well as Mr. Kochyan, whom Antony claims

traveled with him to California and will testify that Antony met with a representative from Disney. (Doc. # 40-1 at Page ID 688, 700). As to Mr. Kochyan, BVB contends that Antony does not say that Mr. Kochyan was present at the meeting or that he can testify as to the actual identity of the pitch consultant, and thus there is no evidence that Mr. Kochyan's testimony will be material to the issues at hand. (Doc. # 41 at Page ID 703).

"The convenience of witnesses acts as 'one of the most important factors' in deciding whether to transfer under § 1404(a)." *Conrad*, 2019 WL 6829952, at *3 (quoting *Valvoline Instant Oil Change Franchising, Inc. v. RFG Oil, Inc.*, No. 12-cv-39-KSF, 2012 WL 3613300, at *7 (E.D. Ky. Aug. 22, 2012)). In particular, "[c]onvenience of *non-party* witnesses, as opposed to employee witnesses, is one of the most important factors in the transfer analysis." *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, No. 5:12-cv-314, 2013 WL 1187009, at *4 (E.D. Ky. Mar. 20, 2013) (quoting in a parenthetical *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 963 (M.D. Tenn. 2008)). However, courts do not treat the convenience of witnesses as a "numbers game," but instead "evaluate the significance of their expected testimony." *OnX USA LLC v. Sciacchetano*, No. 1:11-cv-2523, 2013 WL 821286, at *3 (N.D. Ohio Mar. 4, 2013) (quoting *Siegfried v. Takeda Pharm. N. Am., Inc.,* No. 1:10-cv-2713, 2011 WL 1430333, at *3 (N.D. Ohio Apr. 14, 2011)).

In a copyright case, the weight given to the testimony of witnesses depends upon that testimony's significance in proving the copyright claim. *See Tianhai Lace USA Inc. v. Forever 21, Inc.,* 16-cv-5950 (AJN), 2017 WL 4712632, at *2-3 (S.D.N.Y. Sept. 27, 2017). "To succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it." *Jones v. Blige*,

6

558 F.3d 485, 490 (6th Cir. 2009) (quoting *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003)); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "Congress has bestowed upon those who have obtained copyright registration 'made before or within five years after first publication of the work' a presumption of validity '[i]n any judicial proceeding.'"  *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 477 (6th Cir. 2015) (internal brackets omitted) (quoting 17 U.S.C. § 410(c)).  The presumption of validity is rebuttable.  *Id*.  When there is no direct evidence of copying, a plaintiff "may establish 'an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 536 (6th Cir. 2020) (quoting *Kohus*, 328 F.3d at 853-54).

BVB has shown that its employees and the employees of POW! that worked on *The Zodiac Legacy* will be material witnesses in this case because their testimony will be used to prove or disprove that the Defendant copied the original elements of the work. However, the testimony of BVB's employees will be given less weight, as BVB is a party to this case.  *See Glob. Fitness Holdings, LLC*, 2013 WL 1187009, at *4 (weighing third-party witnesses' testimony more than the testimony of party employees).  But because employees of POW! are not employees of BVB or its parents or subsidiaries, they will be treated as non-party witnesses.

BVB has failed to show that the testimony of Kathie Fong Yoneda in particular will be material to this case.  BVB places great weight on Antony's naming of Ms. Yoneda in his complaint.  The complaint, though, states that Antony "believes" Ms. Yoneda was the person he met with.  (Doc. # 48 at Page ID 737).  If Ms. Yoneda was the representative,

then her testimony would go to show "access to the allegedly-infringed work," which can be an element of copyright infringement. *Glowco, LLC*, 958 F.3d at 536 (quoting *Kohus*, 328 F.3d at 853-54). However, Antony no longer believes Yoneda to be the Disney representative he met with. (Doc. # 40 at Page ID 680). If Antony is not relying on Ms. Yoneda to establish access to the infringing work, then her testimony will not be significant and should not be weighed heavily in the transfer analysis.

BVB has also failed to demonstrate that Antony's witnesses' attesting to the creation of his screenplay will be immaterial to the case. BVB is correct that Antony has a registered copyright, but its legal citations are not on point. It cites 17 U.S.C. § 410(c) for the proposition that in "judicial proceedings the certificate of a registration . . . constitute[s] prima facie evidence of the validity of the copyright." (Doc. # 41 at Page ID 700). The ellipses BVB uses leaves out some key language, specifically, "made before or within five years after first publication." 17 U.S.C. § 410(c). This language has been considered important by the Sixth Circuit. *See Varsity Brands, Inc.*, 799 F.3d at 477. Antony's work is unpublished, and therefore could not have been registered within five years of first publication. Therefore § 410(c) does not apply.[4] Also, § 410(c) gives only a rebuttable presumption, so even if § 410(c) applied, it would not definitively render Antony's witnesses immaterial. *See id.* It is unclear if BVB intends to rebut this presumption, so it cannot be said that Antony's witnesses are immaterial.

BVB has also not shown Mr. Kochyan's testimony to be irrelevant. Access is an element of proving copyright infringement if there is no proof of direct copying. *Tiseo*

---

[4] There are cases that grant a copyright registration in unpublished work the same prima facie showing of the first element of copyright infringement. *See, e.g.*, *PRC Realty Sys. v. Nat'l Ass'n of Realtors, Inc.*, 766 F. Supp. 453, 461 (E.D. Va. 1991). However, these cases are neither persuasive nor binding, and in any event BVB does not cite them.

*Architects, Inc. v. B & B Pools Serv. & Supply Co.*, 495 F.3d 344, 347 (6th Cir. 2007).

There is no evidence in the record of direct copying, so access will be an essential

element of the case.  Since the identity of the representative is unknown, it cannot be said

that Mr. Kochyan's testimony will be immaterial, as he would be one of a few witnesses

to testify to access.

Further, witnesses that put together the "pitch fest" have not been shown to be

material.  BVB has not named any such witnesses, nor has it stated what information they

would be testifying to.  Therefore, their inconvenience is not a strong consideration.  *See*

*Rinks v. Hocking*, No. 1:10-cv-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011)

(not giving weight to defendants' witnesses because defendants did not explain the

importance of those witnesses' testimony).

Material witnesses potentially reside in both Kentucky and California.  While BVB

is correct that a number of material witnesses will reside in California, it has not shown

how many of those witnesses will be BVB employees as opposed to third-party witnesses.

Because the number of POW! employees is unknown, and BVB has not shown that

Antony's Kentucky witnesses are immaterial, BVB has not met its burden and this factor

is neutral.  *See Contech Bridge Sol., Inc. v. Kaeffaber*, No. 1:11-cv-216, 2011 WL

5037210, at *15 (S.D. Ohio Oct. 24, 2011) ("The convenience of potential witnesses is

neutral as well.  Neither party's witness lists are so lopsided as to overcome the mandate

that a plaintiff's choice of forum should rarely be disturbed.").

## B.   Location of Relevant Documents and Relative Ease of Access to Sources of Proof

The parties dispute both the location of documents and the importance of those

documents for purposes of the venue transfer analysis.  BVB contends that many of the

relevant documents are in the Central District of California, where it has its principal place of business.  (Doc. # 39-1 at Page ID 620).  Antony makes the conclusory assertion that the relevant documents would be split between Kentucky and California.  (Doc. # 40 at Page ID 680).

BVB relies upon *Baer v. King*, No. 13-cv-150-DLB-JGW, 2013 WL 6528837, at *4 (E.D. Ky. Dec. 12, 2013), to argue that "[e]ven if 'advances in technology' could 'facilitate the discovery process, producing [the] records and providing them to a Kentucky plaintiff could still be burdensome and time-consuming."  (Doc. # 39-1 at Page ID 620-621). Antony argues that because the documents are "in the cloud" they are equally accessible in either forum.  (Doc. # 40 at Page ID 680).  He does not provide case law supporting this argument.

The ease of electronic transfer has lowered the weight given to considerations of locations of sources of proof, but it has not eradicated it entirely.  *See Baer*, 2013 WL 6528837, at *4 ("While advances in technology would facilitate the discovery process, producing these records and providing them to a Kentucky plaintiff could still be burdensome and time-consuming.").  Courts in this circuit have generally concluded that the burden of transferring documents electronically is minimal.  *See Conrad*, 2019 WL 6829952, at *4 (giving no weight to the location of documentary evidence because such evidence could be transmitted electronically).

BVB is correct when it argues that most of the evidence will be housed at the headquarters of BVB and POW! in California.  *See Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 619 (S.D.N.Y. 2016) (stating that "[i]n copyright infringement cases, a bulk of the evidence typically comes from the infringer").  However,

while the court in *Baer* does say that producing electronic documents could be burdensome and time-consuming, it goes on to weigh that factor only "slightly in favor" of the defendant.  *Baer*, 2013 WL 6528837, at *4.  Therefore, this factor should weighs slightly in favor of BVB.

### C.       The Convenience of the Parties

BVB contends that it has no presence in Kentucky, is not licensed in Kentucky, and Antony has previously traveled to California to attend the "pitch fest," implying that he could travel to California again.  (Doc. # 39-1 at Page ID 614; Doc. # 44-1 at Page ID 719).   Antony contends that BVB has profited enormously from sales of *The Zodiac Legacy* in this district and that BVB is in a better financial position to manage the costs of litigation; however, this type of financial argument is better analyzed under the "relative means" factor and will not be considered here.  (Doc. # 40 at Page ID 675, 682).

When considering the convenience-of-the-parties factor, the Court examines the degree of contact the parties have with the forum. *See Valvoline Instant Oil Change Franchising, Inc.,* 2012 WL 3613300, at *7.  "Additionally, when assessing this factor, courts do not allow transfer of a case in a situation where it would shift the inconvenience from the defendant to the plaintiff."  *Conrad*, 2019 WL 6829952, at *4 (citing *Cowden*, 2010 WL 715850, at *2).

Here, it is undisputed that BVB does not have a presence in Kentucky and Antony does not have a presence in California.  The argument that Antony traveled to California once over a decade ago for a "pitch fest" and therefore it will be convenient for him to do so again is not logical.  Too much time has passed, and Antony's circumstances could have changed.  Therefore, transferring the case will only "shift the inconvenience from

11

the defendant to the plaintiff" and this factor is therefore neutral.  *See Cowden*, 2010 WL

715850, at *4 (finding that when the relative convenience would shift from one party to

the other, the convenience-of-the-parties factor does not favor transfer).

> D.     **The Locus of Operative Facts**

BVB argues that "every alleged event that gave rise to [Antony's] copyright

infringement claim occurred in the Central District of California." (Doc. # 39-1 at Page ID

621).   Antony does not offer an argument in response.   In determining the locus of

operative facts, courts look to the "primary events which gave rise to the [alleged wrongs]."

*See Gunter v. Bemis Co.*, No. 3:15-cv-746, 2016 WL 11248523, at *5 (M.D. Tenn. Apr.

20, 2016) (quoting *Nollner v. S. Baptist Convention, Inc.*, No. 3:14-cv-1065, 2014 WL

3749522, at *8 (M.D. Tenn. July 30, 2014)).  As one court put it in a similar case, "[w]ithout

. . . the creation of the original screenplay . . . [the copyright] claim would not exist . . . ."

*A Slice of Pie Prods. v. Wayans Bros. Entm't*, 392 F. Supp. 2d 297, 306 (D. Conn. 2005).

BVB fails to take into consideration the creation of the screenplay.  Therefore, the Court

will consider both where the infringed work was produced and where the screenplay was

created.  *Id*.   "[W]hile some important events occurred in [Kentucky], it seems clear that

the majority took place in California.  Thus, the locus of operative facts weighs somewhat

in favor of venue in California."  *Id*.

> E.     **The Availability of Process to Compel the Attendance of Unwilling**
>        **Witnesses**

BVB contends that "none of [its] potential witnesses can be compelled to testify at

a trial in Kentucky, but they could be compelled to testify at a trial in the Central District

of California if this case were transferred there."  (Doc. # 39-1 at Page ID 617).  Antony

responds that BVB can "make arrangements to procure its or its partners' employees'

presence in Kentucky," and that for all other non-party witnesses, courts are "equipped to allow testimony to be shown via videotaped deposition."  (Doc. # 40 at Page ID 681).

"A subpoena may command a person to attend a trial . . . [if the court issuing the subpoena is] within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1).  "When both forums have the ability or inability to compel witnesses, courts have deemed this factor neutral."  *Conrad*, 2019 WL 6829952, at *5.  Video depositions are not a substitute for live testimony.  *See Valvoline Instant Oil Change Franchising, Inc.*, 2012 WL 3613300, at *9.

BVB could compel the attendance of its employee witnesses.  Also, BVB has not met its burden of showing that the organizers of the "pitch fest" would be material to the case.  *See* Part II.A, *supra*.  However, BVB will not be able to compel the attendance of POW!'s employees and the potential material witnesses Antony has named.  The Court disagrees with Antony's contention that the ability to depose witnesses mitigates the harm of not having in-person testimony. Therefore, because POW! employees reside in California, and Antony's named witnesses reside in or around Kentucky, this factor is neutral.  *See Conrad*, 2019 WL 6829952, at *5 ("When both forums have the ability or inability to compel witnesses, courts have deemed this factor neutral.").

## F.    The Relative Means of the Parties

BVB argues that there is "no precedent holding that courts considering motions to transfer venue should ignore the inconvenience to corporations of defending themselves in a far-off forum."  (Doc. # 41 at Page ID 697-698).  It contends that Antony has shown that he is capable of litigating the case in California because he previously traveled to California in 2006 and that his hired counsel will need to travel there for the case.  (Doc.

# 41 at Page ID 698).  Antony argues that it would be nearly impossible for him to litigate the case in California and that BVB is a large corporation that will not be inconvenienced by having to litigate in Kentucky.  (Doc. # 40 at Page ID 682).

"[T]ransfer is not appropriate where it would effectively deprive a plaintiff of access to the courts."  *McIntosh v. E-Backgroundchecks.com, Inc.*, No. 5:12-cv-310-DCR, 2013 WL 954281, at *5 (E.D. Ky. Mar. 11, 2013).  However, a claim of financial burden that deprives a plaintiff of access to the courts requires some evidentiary showing.  *See Crestmark Fin. Corp. v. Omo Sci., Energy and Tech., Inc.* 2010 WL 3702371, at *4 (E.D. Mich. Sept. 16, 2010) ("Although the Court recognizes that financial hardship is a legitimate consideration, a conclusory statement of financial hardship is not sufficient."); *Thomas v. Home Depot, U.S.A., Inc.*, 131 F.Supp.2d 934, 937 (E.D. Mich. 2001) (finding that plaintiff's "limited resources weigh[ed] against a change of venue because the relative financial strength of the parties [was] a legitimate consideration," but concluding that it would "not place great weight on [that] consideration" because plaintiff "never substantiated his financial condition with any exhibits."); *Fruit of the Loom, Inc. v. Zumwalt*, No. 1:15-cv-131-JHM, 2015 WL 7313423 (W.D. Ky. Nov. 19, 2015).

"[C]ourts consider that individuals often have fewer financial means to litigate than companies."  *Conrad*, 2019 WL 6829952, at *5; *see also ViSalus, Inc. v. Smith*, No. 13-10631, 2013 WL 2156031, at *8 (E.D. Mich. May 17, 2013) (finding that the relative means factor cut in favor of the defendant because plaintiff was a company that employed hundreds of people while defendant was a natural person); *McDorman v. D&G Props.*, No. 5:18-cv-36-TBR, 2018 WL 6133167, at *6 (W.D. Ky. Nov. 21, 2018) (stating that "as a matter of common sense . . . an individual party may have less means to litigate than a

14

company party" and finding that the relative-means factor weighed against transfer); *Creech v. Blue Cross & Blue Shield of Fla., Inc.*, No. 3:17-CV-335-TBR, 2017 WL 6567814, at *7 (W.D. Ky. Dec. 22, 2017) (finding that the relative-means factor favored the plaintiff because the defendant was a large corporation requesting a transfer to its home state and the plaintiff was a private individual, and stating that "it follows logically that [plaintiff] has less means to litigate in a faraway district than [the defendant]").

It follows logically that BVB, a company with the rights to a nationally distributed work of art that used to be the sole member of DBG, a subsidiary of one of the largest companies in the world, would have more means to litigate this case than would a private individual. *See Creech*, 2017 WL 6567814, at *7. BVB's assertion that Antony has previously traveled to California and that he has retained the services of a high-powered attorney does not alter the "common-sense" approach that courts in this circuit have recently taken when analyzing the relative means of a corporation versus a private party. *See McDorman*, 2018 WL 6133167, at *6. However, this factor weighs only slightly in favor of Antony because he has not made an evidentiary showing that litigating in California could deprive him of access to the courts. *See Thomas*, 131 F. Supp. 2d at 937.

### G. The Forum's Familiarity with the Governing Law

Neither party offers an argument as to this factor. The governing law in this case is federal copyright law. Federal district courts are presumed to be equally familiar with federal copyright law. *Georgetown Home & Garden, LLC v. Tractor Supply Co.*, No. 11-12006, 2011 WL 13218003, at *5 (E.D. Mich. Dec. 19, 2011). Therefore, this factor is neutral.

15

### H.      The Weight Accorded to Plaintiff's Choice of Forum

BVB argues that Antony's choice of forum should only be given some weight and need only be overcome by a preponderance of the evidence.  (Doc. # 41 at Page ID 697). Antony argues that his choice of forum is given substantial deference and should not be disturbed absent a clear showing by BVB.  (Doc. # 40 at Page ID 678-79).

Antony's choice of forum weighs strongly against transfer in this case.  The Sixth Circuit has stated that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Reese*, 574 F.3d at 320.  And while not dispositive, the plaintiff's choice of forum "should be given weight when deciding whether to grant a motion to change venue."  *Lewis v. ABC Bus. Servs.*, 135 F.3d 389, 413 (6th Cir. 1998).  Indeed, most courts, including those in this district, give the plaintiff's choice of forum great weight or require a strong showing by the defendant that the transferee forum is more convenient.   15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3848 n.28 (collecting cases); *see Breeders' Cup Ltd. v. Nuvei Techs., Inc.*, No. 5:19-cv-113-GFVT, 2020 WL 1046817, at *2 (E.D. Ky. Mar. 4, 2020); *Conrad*, 2019 WL 6829952, at *3, *6; *Murty Pharm., Inc. v. Akorn, Inc.*, No. 5:06-83-JMH, 2006 WL 3193431, at *3 (E.D. Ky. Nov. 2, 2006); *Alltech, Inc. v. Carter*, NO. 5:08-CV-325-KKC, 2009 WL 10710822, at *4 (E.D. Ky. Feb. 9, 2009).

The facts that have been found to decrease the importance of the plaintiff's choice of forum are not present here.  This is not a case, for example, where there is "little connection between this action and [the forum]."  *Compare Cowden*, 2010 WL 715850, at *2.  As discussed, Antony alleges that he wrote the screenplay in question while living in the Eastern District of Kentucky.  *See A Slice of Pie Prod., LLC*, 392 F.Supp.2d at 306

16

("[S]ome material events occurred in Connecticut, most notably the writing of the screenplay. Plaintiff's choice of forum therefore weighs somewhat in favor of retaining the case in Connecticut."). Nor is this a case where the plaintiff does not reside in the chosen forum. *Compare Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 651 (6th Cir. 2016) ("[W]here the plaintiff does not reside in the chosen forum, courts assign less weight to the plaintiff's choice.") (internal brackets omitted).

BVB argues that nothing in § 1404(a) *requires* district courts to defer to a plaintiff's choice of forum or imposes an elevated burden on defendants to demonstrate that transfer is proper. (Doc. # 41 at Page ID 695-697). But while this may be true, § 1404(a) does not limit the weight a district court may place on any applicable factor, including the plaintiff's choice of forum. After all, § 1404(a) broadened, not narrowed, the district court's discretion in comparison to the pre-existing common-law doctrine of *forum non conveniens*. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Therefore, it is proper to give Plaintiff's choice of forum strong consideration when deciding whether to transfer a case.

## I.      Trial Efficiency and the Interests of Justice

BVB argues that the interests of justice favor transferring the case to the Central District of California because California has the stronger interest in resolving Plaintiff's claim, largely because the alleged infringement occurred in California. (Doc. # 39-1 at Page ID 621). BVB asserts that the docket in the Central District of California is less congested than the docket in the Eastern District of Kentucky. BVB cites statistics showing that, in comparison to the Eastern District of Kentucky, it takes two months less time for a civil case to get from filing to trial in the Central District of California. (*Id.*).

17

Furthermore, Defendant argues, the Eastern District of Kentucky has twice the percentage amount of civil cases that have been pending for three years or longer. (*Id*.). Antony argues that because he is a Kentucky resident, the relative docket congestion between the Eastern District of Kentucky and the Central District of California has little relevance, and since he wrote his screenplay in Kentucky, this factor favors keeping the case in Kentucky. (Doc. # 40 at Page ID 682-684).

"In examining the interests of justice, courts also look to the public's interest in having a local controversy adjudicated locally. When both states maintain an interest in the case, the Court is not required to transfer the case." *Conrad*, 2019 WL 6829952, at *7 (internal citation omitted). Courts also consider trial efficiency when deciding a motion to transfer by examining evidence of docket congestion and possible speed of resolution. *See id*.; *McIntosh,* 2013 WL 954281, at *5.

BVB's evidence of trial congestion, which shows a two-month differential between resolution of a case in Kentucky and resolution of a case in the Central District of California, does not show a "substantial difference in disposition times" to merit weight in the transfer analysis. *See Mcintosh*, 2013 WL 954281, at *5 (rejecting the contention that a six-month difference in time from filing to trial weighs in favor of transfer). Further, while California is the location where the alleged violation occurred and where Antony pitched his script, Kentucky does not lack connections to the lawsuit. Antony is a resident of Kentucky and he wrote his screenplay there. "[B]oth states have an interest in adjudicating the matter locally," and therefore the interests-of-justice factor is neutral. *See Conrad*, 2019 WL 6829952, at *7 (finding the interests-of-justice factor neutral when most

of the operative facts occurred in Ohio but one defendant had residency in Kentucky and the other had its principal place of business in Kentucky).

### J.   Weighing the Factors

The locus of operative facts and the location of sources of proof weigh slightly in favor of BVB.  The relative means of the parties weighs slightly in favor of Antony as does the weight accorded to plaintiff's choice of forum.  The remaining factors are neutral. Without a stronger showing that the factors weigh in its favor, BVB has failed to carry its burden pursuant to § 1404(a) and transferring the case will merely shift the inconvenience from one party to the other.  *See Reese*, 574 F.3d at 320 ("In the end, the [transfer] issue turns on the standard of review.  Compelling considerations favor both parties' positions, making it difficult to say that the district court would have abused its discretion had he picked either location as the more appropriate forum.").

### III.   CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that Defendant's Motion to Change Venue (Doc. # 39) is **DENIED.**

This 1st day of October, 2020.



Signed By:

*David L. Bunning*

**United States District Judge**

K:\DATA\ORDERS\Cov2018\18-205 order re mtn to transfer.docx